SAMUELS v. TWIN STATE REALTY CO.

(Supreme Court, Appellate Term, First Department. November 19, 1914.)

SET-OFF AND COUNTERCLAIM (§ 44*)—JOINT AND SEVERAL CLAIMS—ADVANCES.

Where the plaintiff, who had previously sold property for defendant on commission, and another, agreed with defendant to sell defendant's property on commission, and defendant agreed to advance to each of the parties a certain sum per week, to be deducted from commissions due as the sales were made, the defendant cannot deduct the amount of such advances from the commissions earned by the plaintiff individually before the agreement was entered into.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 82–96, 98, 99; Dec. Dig. § 44.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Louis B. Samuels against the Twin State Realty Company. Judgment for defendant, and plaintiff appeals. Reversed, and judgment directed for the plaintiff.

Argued October term, 1914, before SEABURY, BIJUR, and COHALAN, JJ.

Nathan S. Jerome, of New York City, for appellant.
Bennett E. Siegelstein, of New York City, for respondent.

BIJUR, J. Plaintiff sues for a balance of commissions earned by him on various sales of property belonging to defendant during 1910 and 1911, the amount claimed and admittedly earned being some $133. The defense of payment is presented in the following form:

On May 11, 1912, the plaintiff and one Goldberg entered into an agreement with the defendant (spoken of during the trial as the partnership agreement, although plaintiff and Goldberg are not anywhere therein designated as partners) whereunder plaintiff and Goldberg agreed to act as agents for the sale of the defendant's property, and among other terms the defendant agreed to "pay the parties of the second part $50 per week as an advance against commissions earned or that may be hereafter earned by either or both of the parties of the second part, said advance of $50 per week to begin April 20, 1912, and to be paid *$25 to each of the parties* of the second part; * * * and the parties of the second part agree that all advances made by the said party of the first part shall be deducted from the commissions due *as the sales are made.*" It transpired that, beginning with May 20, 1912, and continuing weekly for seven weeks, the defendant paid to plaintiff and Goldberg $25 each, an aggregate of $175, for which payments, so far as plaintiff is concerned, he gave an ordinary individual receipt. It was also shown that during the same period defendant paid certain moneys to plaintiff and Goldberg to meet disbursements incurred in the sale of property, and that the receipts for those moneys are invariably signed by both the plaintiff and Goldberg.

It seems to me to be quite evident that the language of the agreement of April 11, 1912, was not intended to offset against the advances made to plaintiff under that agreement the commissions which plaintiff individually had then already earned on sales made years before, when he was acting as agent of the company individually. It would, to my mind, be distorting the language of the agreement made between defendant on one hand, and plaintiff and Goldberg on the other, to assume that it was intended to cover a state of accounts with which only plaintiff was concerned, and to which Goldberg had no relation. Moreover, the last phrase of the clause quoted, in which plaintiff and Goldberg agree that the advances made under the contract shall be deducted from commissions *"due as the sales are made,"* indicates plainly that the advances contemplated were to be repaid only out of commissions to be earned under the agreement then signed It seems equally clear that the several payments, aggregating $175, made to plaintiff on the very dates called for in the agreement of April

11, 1912, were advances under that contract, and were not intended as unrelated miscellaneous loans to plaintiff.

In my conclusions as to both the points involved in this case, I am confirmed by admissions of defendant's president and by testimony of various witnesses during the trial; but the bare record as I have recited it seems to me to be sufficiently clear to require a reversal of the judgment. As this case has been twice tried, and both records are now before us, and the subject is patently exhausted by the evidence adduced, judgment absolute is directed for the plaintiff in the sum concededly earned by him, $133, with appropriate costs in the court below and the costs of this appeal. All concur.

